UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHIE A. STOKES, JR.,

                Plaintiff,

       v.

WAYNE COUNTY, et al.,

                Defendants.

_____

**DECISION AND ORDER**

6:23-CV-06482 EAW

## <u>INTRODUCTION</u>

Plaintiff Richie A. Stokes, Jr. ("Plaintiff"), proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights. (Dkt. 1).  Presently before the Court is a motion for judgment on the pleadings filed by defendants Wayne County, Wayne County Sheriff's Office, Deputy Kyle Dinardo ("Deputy Dinardo"), Deputy Megan King ("Deputy King"), District Attorney Michael D. Calarco ("DA Calarco"), Assistant District Attorney Tracey Fox ("ADA Fox"), Assistant District Attorney Christine K. Callanan ("ADA Callanan"), and Assistant District Attorney Scott Kadien ("ADA Kadien") (collectively "Wayne County Defendants") pursuant to Federal Rule of Civil Procedure 12(c).  (Dkt. 12).

For the reasons that follow, Wayne County Defendants' motion is granted, but especially because of Plaintiff's *pro se* status, he is granted leave to file an amended complaint within 30 days of the date of and in accordance with this Decision and Order.

- 1 -

*See Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) ("the usual practice is to grant leave to amend the complaint" when a motion to dismiss is granted).

## **BACKGROUND**

### I.   **Factual Background**

The following facts are taken from the allegations in Plaintiff's complaint. (Dkt. 1). As required on a motion to dismiss, Plaintiff's allegations are treated as true.

On January 17, 2021, the Newark Police Department received a 911 call at 8:57 p.m. from Joshua Colvin. (*Id.* at ¶ 14). Mr. Colvin reported hearing gunshots on the street outside his house. (*Id.*). Mr. Colvin's wife, Ashley Colvin, also reported hearing gunshots and stated that immediately afterward she observed a black sedan traveling at a fast speed that failed to yield at a stop sign. (*Id.*).

Richard Barns, Jr., submitted a written deposition statement the same night reflecting that at around 8:45 p.m., he was riding in Chiquita Irvin's vehicle when he saw a black sedan parked near his home. (*Id.* at ¶ 15). Mr. Barns stated that as he and Ms. Irvin were driving, they again saw the same black sedan and pulled up next to it. (*Id.*). Mr. Barns stated that he saw a girl he knew named Amanda driving and Plaintiff, whom he had known since they were children, in the passenger seat. (*Id.*). Mr. Barns asked Plaintiff if he was following them and then saw Plaintiff point a gun, saw a flash, heard a pop, and the glass on his car door broke. (*Id.*). Mr. Barns instructed Ms. Irvin to drive to the Newark Police Department. (*Id.*). Ms. Irvin, who also recognized Amanda and had known Plaintiff since they were children, submitted a written statement corroborating the information in Mr. Barns' statement. (*Id.* at ¶ 16).

Defendant Colacino, employed by the Newark Police Department, apprehended Plaintiff later that night. (*Id.* at ¶ 17). Plaintiff alleges he was unlawfully detained by Defendant Jackson and Defendant Colacino (*id.* at ¶ 18), both employed by the Newark Police Department, who applied excessive force while detaining Plaintiff (*id.* at ¶ 19). Newark Police Department Investigator Defendant Warren conducted an interview of Plaintiff, but Plaintiff was released because of the fabricated false complaints. (*Id.* at ¶ 20). Defendant Warren did not follow proper protocol when he failed to perform a proper pre-investigation report to determine whether Plaintiff shot a firearm. (*Id.* at ¶ 21).

On January 26, 2021, Plaintiff was falsely arrested and charged with two counts of criminal possession of a loaded firearm, one count of attempted assault in the second degree, and one count of reckless endangerment in the first degree. (*Id.* at ¶ 22). Newark Police Department officers Defendant Dapolito and Defendant Salerno prepared the false charges to insulate Defendant Colacino, Defendant Warren, and themselves from their unconstitutional conduct. (*Id.* at ¶ 23). Plaintiff was never read his *Miranda* rights. (*Id.*).

Upon Plaintiff's arrest, he was finger printed, searched, and taken to the Wayne County Jail. (*Id.* at ¶ 25). At the Wayne County Jail, Plaintiff's requests for an attorney were ignored and a strip search was performed. (*Id.* at ¶¶ 26, 27). Plaintiff was then held in a holding tank with no blanket or food. (*Id.* at ¶ 31).

On January 27, 2021, Plaintiff was informed that his preliminary hearing was scheduled for February 1, 2021. (*Id.* at ¶ 32). During Plaintiff's five-minute free phone call, he called the mother of his children, Heather Angelo, and asked her to contact the Supreme Court Clerk to see who would be representing Plaintiff. (*Id.* at ¶ 34). Ms. Angelo

was informed that attorney Robert Denari would be representing him.  (*Id.* at ¶ 35).  Despite having knowledge that the criminal charges were baseless, DA Calarco, ADA Callanan, and ADA Kadien continued with the prosecution.  (*Id.* at ¶ 37).

On January 27, 2021, Plaintiff was informed by letter that a grand jury proceeding was commenced against him and that he was entitled to testify on his own behalf if he wished.  (*Id.* at ¶ 38).  Defendants knew that Plaintiff had a right to appear before the grand jury but conducted the hearing in his absence.  (*Id.* at ¶ 40).  The grand jury indicted Plaintiff on fabricated charges.  (*Id.* at ¶ 41).  DA Calarco, ADA Callanan, and ADA Kadien conspired against Plaintiff in retaliation for a motion Plaintiff filed in a previous matter.  (*Id.* at ¶ 43).

On January 29, 2021, Plaintiff's bail hearing was held and Plaintiff's counsel informed the court that the grand jury proceedings violated Plaintiff's constitutional rights.  (*Id.* at ¶ 62).  The judge did not entertain counsel's arguments and set bail at $15,000 cash and $30,000 bond, which Plaintiff posted that same day.  (*Id.* at ¶ 63).  On February 17, 2021, Plaintiff filed a notice of claim.  (*Id.* at ¶ 64).  At Plaintiff's arraignment, ADA Callanan also charged Plaintiff with a violation of conditional discharge for an alleged failure to install an ignition interlock device.  (*Id.* at ¶ 67).

On May 11, 2021, Judge Daniel Barrett dismissed the indictment on the ground that the district attorney's office did not sufficiently delay the presentation to the grand jury to ensure that Plaintiff had reasonable notice and could consult counsel before deciding whether to testify.  (*Id.* at ¶ 80).  On May 21, 2021, Plaintiff was informed by DA Calarco, ADA Callanan, and ADA Kadien that the grand jury proceeding would be resumed on June

7, 2021.  (*Id.* at ¶ 81).  The continuation of the criminal charges against Plaintiff was to insulate Defendants from liability for their illegal conduct and unconstitutional actions.  (*Id.* at ¶ 82).  On June 23, 2021, Judge Barrett issued an arrest warrant for Plaintiff.  (*Id.* at ¶ 87).

At Plaintiff's arraignment, Plaintiff received a copy of the indictment, which was not signed by the foreperson or filed with the County clerk's office, as required by law.  (*Id.* at ¶ 103).  At Plaintiff's suppression hearing, ADA Callanan withheld *Brady* material from Deputy Dinardo and Deputy King, which would have changed the outcome of the hearing.  (*Id.* at ¶ 124).  In addition, Judge Barrett showed bias against Plaintiff.  (*Id.* at ¶ 125).

On February 17, 2023, Plaintiff was found not guilty of the charges against him.  (*Id.* at ¶ 126).  The charge for violation of conditional discharge was withdrawn.  (*Id.*).

Read liberally, in his complaint, Plaintiff asserts claims for:  (1) false arrest by Defendants Wayne County, Wayne County Sheriff's Office, Newark Police Department, Investigator Warren, Defendant Dapolito, Defendant Salerno, Defendant Colacino, and Deputy John Does; (2) excessive force against Defendant Colacino, Defendant Dapolito, Defendant Salerno, and Defendant Warren; (3) a *Monell* claim against Wayne County; (4) a substantive due process claim against Wayne County, Defendant Colacino, Defendant Salerno, Defendant Dapolito, Defendant Warren, and Deputy John Does; (5) a procedural due process claim against Wayne County, Defendant Colacino, Defendant Salerno, Defendant Dapolito, Defendant Warren, and Defendant Deputy John Does; (6) malicious prosecution against all defendants; (7) assault and battery against Wayne County,

Defendant Colacino, Defendant Salerno, Defendant Dapolito, Defendant Warren, and Deputy John Does; and (8) negligent hiring and supervision against Wayne County. Plaintiff seeks damages of $10,000,000 on each of his claims.

## II.   <u>Procedural Background</u>

Plaintiff commenced the instant lawsuit on August 22, 2023.   (Dkt. 1).   On September 22, 2023, an answer was filed on behalf of defendants Newark Police Department, Matthew Colacino, Gregory Deboerdere, Jacob Jackson, Brenden Salerno, Jay Warren, and Nicholas Dapolito (collectively "Newark Defendants").   (Dkt. 5).   On October 18, 2023, an answer was filed on behalf of Wayne County Defendants.   (Dkt. 9).

On November 14, 2023, Wayne County Defendants filed the instant motion for judgment on the pleadings.   (Dkt. 12).   Plaintiff filed three untimely motions for extensions of time to respond to Wayne County Defendants' motion (Dkt. 18; Dkt. 20; Dkt. 22), which were granted by the Court despite their untimeliness (Dkt. 19; Dkt. 21; Dkt. 23).   Plaintiff did not ultimately respond to the instant motion.

## <u>DISCUSSION</u>

## I.   <u>Legal Standards</u>

### A.   <u>Rule 12(c) Motion for Judgment on the Pleadings</u>

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."   Fed. R. Civ. P. 12(c).   "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for

failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (internal quotation marks and citation omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

Although the Court is "obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must satisfy the plausibility standard set forth in *Iqbal* and *Twombly*, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly*, though, we remain obligated to construe a *pro se* complaint liberally.").

In addition, a failure to respond to a motion for judgment on the pleadings pursuant to Rule 12(c) does not constitute "default" justifying dismissal of the complaint. *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000). "[A]though a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Id.* at 322–23. Thus, "[i]f a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *Id.* at 323.

**B. <u>Section 1983</u>**

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

In addition, with respect to any § 1983 claim, a plaintiff is required to demonstrate a defendant's personal involvement in the deprivation of a federal constitutional right. *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023); *see also Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (a § 1983 plaintiff must establish "that each Government-official defendant, through the official's own individual actions, has violated the Constitution" (quotation and citation omitted)); *Bellinger v. Fludd*, No. 20-CV-2206 (EK)(SIL), 2020 WL 6118823, at *2 (E.D.N.Y. Oct. 16, 2020) ("A plaintiff must allege the direct or personal involvement of each of the named defendants in the alleged constitutional deprivation." (citing *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010))).

## II.   False Arrest Claim

The Court construes Plaintiff's first claim as one for false arrest pursuant to § 1983.[1] Wayne County Defendants move to dismiss Plaintiff's false arrest claim on grounds that there was probable cause to detain and arrest him. The Court agrees that Plaintiff's false arrest claim must be dismissed as against the moving parties.

### A.   Defendant Wayne County Sheriff's Department

As a threshold matter, to the extent that Plaintiff has sued the Wayne County Sheriff's Department, it is not a proper defendant. "[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate

---

[1]   Plaintiff does not define or label his first claim for relief, unlike his remaining causes of action. Rather, the first 140 paragraphs of his complaint comprise the first cause of action. Those 140 paragraphs contain the factual allegations that relate to all eight of his causes of action, but a fair reading of the allegations suggest that the first cause of action is for false arrest. To the extent that Plaintiff intended the first cause of action to assert other claims, Plaintiff may clarify that in an amended pleading.

and apart from the municipality and therefore, cannot sue or be sued." *Baez v. Tioga Cnty.*, No. 9:23-CV-1512 (LEK/ML), 2024 WL 3371034, at *3 (N.D.N.Y. July 11, 2024) (quoting *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002)); *Smith v. Oneida Cnty. Sheriff Dep't*, No. 6:24-CV-687 (GTS/MJK), 2024 WL 3063725, at *2 (N.D.N.Y. June 20, 2024) ("The Oneida County Sheriff's Department is not a proper party to this action. 'A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity.'" (quoting *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999)); *Kelly v. Colonie Police Dep't*, No. 820CV721(GTS/CFH), 2020 WL 6465448, at *3 (N.D.N.Y. Sept. 21, 2020) ("It is well established that '[a] police department is an administrative arm of [a] municipal corporation,' and 'cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity.'" (quoting *Baker*, 42 F. Supp. 2d at 198), *report and recommendation adopted*, 2020 WL 6445901 (N.D.N.Y. Nov. 3, 2020). Accordingly, Wayne County Sheriff's Department is dismissed as a defendant.

### B. **Defendant Wayne County**

A municipality may only be named as a defendant pursuant to § 1983 in certain circumstances.[2] In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court

---

[2]     Although Plaintiff's third cause of action purports to be a "Monell claim," "*Monell* does not provide an independent separate cause of action against a municipality; 'it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation,'" *Gem Fin. Serv., Inc. v. City of N.Y.*, 298 F. Supp. 3d 464, 490 (E.D.N.Y. 2018) (quoting *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006)). "In other words, *Monell* is a

outlined the limited circumstances under which a municipality may be liable under § 1983. In particular, a municipality may not be held liable just because it employs a tortfeasor. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992). It is only where a municipality, through the execution of its policies, deprives an individual of his constitutional rights, that it can be held liable for an injury. *Monell*, 436 U.S. at 694; *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (when a plaintiff seeks to impose liability on a municipality, he must allege that the constitutional violation was caused by "action pursuant to official municipal policy" (quoting *Monell*, 436 U.S. at 691)).

> Official municipal policy can be established by alleging:
>
> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 315 (N.D.N.Y. 2023) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)). Only in limited circumstances can a failure to train "certain employees about their legal duty to avoid violating citizens' rights . . . rise to the level of an official government policy for

---

cause of action, but is rather a form of liability." *Watkins v. Town of Webster*, 592 F. Supp. 3d 96, 118-19 (W.D.N.Y. 2022). Accordingly, the Court dismisses Plaintiff's third claim as a standalone claim but considers the allegations against Wayne County contained therein in the context of Plaintiff's other substantive claims.

purposes of § 1983." *RF v. S. Country Cent. Sch. Dist.*, No. 13CV2710 (SJF)(AKT), 2016 WL 5349782, at *11 (E.D.N.Y. Sept. 23, 2016) (quoting *Connick*, 563 U.S. at 61).

Plaintiff contends that Wayne County had a "custom, policy and practice to authorize and permit certain Deputy Sheriffs and Newark Police, including the individual defendants, to cause the search and seizure of the Plaintiff's person despite the lack of a warrant [or] any other justification that would justify the search and seizure." (Dkt. 1 at ¶ 151). He further alleges that Wayne County had a policy of not supervising and training Deputy Sheriffs and Newark Police officers, which caused the injuries to Plaintiff. (*Id.* at ¶ 150). In other words, the basis for Plaintiff's theory of *Monell* liability is that Wayne County tolerated violations of Plaintiff's constitutional rights during his arrest and that its employees knew that they would not be disciplined for doing so.

"Importantly, courts have dismissed custom or practice *Monell* claims that rely solely on one instance of conduct to prove the existence [of] a persistent and widespread custom. In fact, the very foundation of *Monell* liability rests upon the notion that 'isolated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability.'" *Vasquez v. City of New York*, No. 20-CV-4641 (ER), 2023 WL 8551715, at *4 (S.D.N.Y. Dec. 11, 2023) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012)); *see also Treadwell v. Cnty. of Putnam*, No. 14 Civ. 10137 (KMK), 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016) ("*Monell* liability does not derive from individual incidents of wrongdoing by non-policymakers."); *Balchan v. City Sch. Dist. of New Rochelle*, No. 21-CV-04798 (PMH), 2023 WL 4684653, at *7 (S.D.N.Y. July 21, 2023) ("[A] custom or

policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere [government] employee. . . ." (quoting *Newton v. City of N.Y.*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008)).

Here, the allegations in Plaintiff's complaint concerning an alleged policy or custom by Wayne County to violate constitutional rights solely concern Plaintiff; there are no allegations relating to any similar parties. In other words, Plaintiff has failed to plausibly allege that the conduct at issue was part of a persistent or widespread discriminatory practice or amounted to anything but a single incident of alleged unconstitutional activity, which is insufficient under *Monell*. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Porath v. City of New York*, No. 22CIV1302(JPC)(SLC), 2023 WL 9197680, at *13 (S.D.N.Y. Dec. 21, 2023) ("[I]solated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012))), *report and recommendation adopted*, 2024 WL 127025 (S.D.N.Y. Jan. 11, 2024); *Turner v. Correct Care Sols.*, No. 18 Civ. 3370 (VB), 2019 WL 1115857, at *13 (S.D.N.Y. Mar. 11, 2019) (granting motion to dismiss *Monell* claim, advising that "to adequately plead a policy or custom under *Monell*, plaintiff must plausibly allege similar incidents involving others"). Likewise, Plaintiff has identified no omission in Wayne County's training of its employees that resulted in a violation of constitutional

- 13 -

rights. *See Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 293 (E.D.N.Y. 2022) ("Under the failure to train theory, a municipality may be liable 'when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights . . . [but] the policymakers choose to retain that program.'" (quoting *Buari v. City of New York*, 530 F. Supp. 3d 356, 399 (S.D.N.Y. 2021))).  Finally, to the extent that any allegations in Plaintiff's complaint suggest that the purported conduct was pursuant to a policy, they are wholly conclusory and lack any factual detail.  *Vasquez*, 2023 WL 8551715, at *5 ("Similarly, courts dealing with *Monell* claims have disregarded the use of conclusory allegations that do not provide additional support that a plaintiff's experience is consistent with a larger pattern of similar conduct." (quotations omitted)).

For these reasons, Plaintiff's false arrest claim against Wayne County is dismissed for failure to state a plausible claim.

## C. Individual Defendants Deputy Dinardo, Deputy King, and John Doe Deputy Defendants

"An individual defendant may be held liable for false arrest only if he or she was personally involved and actually and proximately caused the unlawful arrest."  *Grant v. City of New York*, No. 15CV3635(ILG/ST), 2019 WL 1099945, at *7 (E.D.N.Y. Mar. 8, 2019).  Plaintiff's complaint does not clearly identify the basis for asserting such a claim against any of the Wayne County Defendants, providing an independent basis for dismissal, but even if he had, the claim has not been plausibly alleged.

"A claim for false arrest under § 1983 looks to state law as a starting point to determine the elements of [the] claim. . . ." *Potter v. Port Jervis Police Dep't*, No. 19-CV-10519 (CM), 2020 WL 528823, at *4 (S.D.N.Y. Feb. 3, 2020).  Under New York law, a plaintiff claiming false arrest "must show that: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'"  *Id.* (alteration omitted and quoting *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012)).  Of particular relevance here, "[a]n arrest is privileged if it is based on probable cause."  *Id.*; *see also Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." (quotation omitted)).  "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested *has committed or is committing a crime*."  *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (citation omitted).

Moreover, "[i]n assessing probable cause, a court must consider [only] those facts available to the officer at the time of the arrest and immediately before it, as probable cause does not require absolute certainty."  *Sagy v. City of New York*, No. 18-CV-1975 (HG), 2022 WL 6777602, at *3 (E.D.N.Y. Oct. 11, 2022) (quotations and internal citations omitted).  Indeed, "[o]nce an officer has probable cause, he or she is 'neither required nor allowed' to continue investigating, sifting and weighing information."  *Panetta v. Crowley*, 460 F.3d 388, 398 (2d Cir. 2006) (quoting *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir.

1989)); *see also Alexis v. Town of Cheektowaga*, No. 17-CV-985S, 2021 WL 5239900, at *5 (W.D.N.Y. Nov. 10, 2021) ("Once probable cause has been established, a 'police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" (quoting *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997))).

"It is well-settled that hearsay can be used to establish probable cause." *Druss v. Muscatella*, No. 20-CV-06341 (PMH), 2022 WL 3701085, at *5 (S.D.N.Y. Aug. 26, 2022). (quotation and citation omitted)).  In addition, "[w]hen a victim or eyewitness reports a crime, probable cause generally will be found to exist based upon the eyewitness's testimony unless circumstances raise doubt as to the veracity of the eyewitness's statement." *Alexis*, 2021 WL 5239900, at *5 (citations omitted)); *see also Washington v. Napolitano*, 29 F.4th 93, 110 (2d Cir. 2022) ("[I]t is well settled that an officer can rely upon a statement by a putative victim or eyewitness to establish probable cause unless the officer has reason to doubt the witness's veracity.").

Here, Plaintiff was arrested and charged with two counts of criminal possession of a loaded firearm,[3] one count of attempted assault in the second degree,[4] and one count of

---

[3]    "A person is guilty of criminal possession of a weapon in the second degree when: (1) with intent to use the same unlawfully against another, such person: (a) possesses a machine-gun; or (b) possesses a loaded firearm; or (c) possesses a disguised gun; or (2) such person possesses five or more firearms; or (3) such person possesses any loaded firearm.  Such possession shall not, except as provided in subdivision one or seven of section 265.02 of this article, constitute a violation of this subdivision if such possession takes place in such person's home or place of business."  N.Y. Penal Law § 265.03.

[4]    In relevant part, "[a] person is guilty of assault in the second degree when: 1. With intent to cause serious physical injury to another person, he causes such injury to such

reckless endangerment in the first degree.[5]  The allegations in Plaintiff's own complaint demonstrate that there existed probable cause for his arrest on these charges.  Plaintiff's complaint reflects that depositions were provided by two eyewitness complainants who stated that in response to being asked if he was following them, Plaintiff pulled a loaded gun and fired at their vehicle, causing damage to the vehicle.  In addition, there were reports from two other individuals who saw a black sedan in the vicinity of the gunshot sounds.

Accordingly, to the extent Plaintiff alleges that any of the Wayne County Defendants are liable for false arrest, the motion to dismiss is granted.  *Pierre v. Madena*, No. 19-CV-247 (LDH) (LB), 2024 WL 1332669, at *2 (E.D.N.Y. Mar. 28, 2024) (granting Rule 12(b)(6) motion to dismiss claims for false arrest and false imprisonment because there was probable cause to arrest plaintiff based on information contained in reports "containing allegations from the complaining victim").

## III.    <u>Substantive Due Process</u>

In his substantive due process claim, Plaintiff alleges that Wayne County and Defendants Colacino, Salerno, Dapolito, Warren, and Deputy John Does trumped up false charges intended to cover up their excessive force, assault, and unlawful arrest.  (Dkt. 1 at ¶ 159).  He contends that "[a]s a result of this arrest, the Plaintiff was denied his substantive

---

person or to a third person; or 2. With intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."  N.Y. Penal Law § 120.05.

[5]    "A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person."  N.Y. Penal Law § 120.25.

rights under the United States Constitution and the New York State Constitution." (*Id.* at ¶ 160).

"Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense . . . but not against government action that is 'incorrect or ill-advised.'" *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.1994) (internal quotation marks and citations omitted). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)).

However, "[w]here a particular [constitutional] Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *Schachtler Stone Prods. v. Town of Marshall*, No. 6:21-CV-001100 (AMN/MJK), 2024 WL 4025862, at *13 (N.D.N.Y. Sept. 3, 2024) ("It is 'well established' that '[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process.'" (quoting *Hu v. City of New York*, 927 F.3d 81, 104 (2d Cir. 2019))).

"Because the Fourth Amendment provides the source for a claim under Section 1983 premised upon an allegedly false arrest, false imprisonment, or malicious prosecution, plaintiffs cannot state a substantive due process claim against defendants based on such conduct." *Jackson ex rel. Jackson v. Suffolk Cnty.*, 87 F. Supp. 3d 386, 399 (E.D.N.Y. 2015); *Ovalle v. Suffolk Cnty.*, No. 21-CV-5371 (BMC), 2024 WL 3986720, at *4 (E.D.N.Y. Aug. 29, 2024) ("The Supreme Court disfavors relying on substantive due process where, as here, the Fourth Amendment affords protection."); *Green-Page v. United States*, No. 1:20-CV-00837, 2024 WL 3584194, at *13 (W.D.N.Y. July 30, 2024) (dismissing substantive due process claim because "[w]here a claim can be characterized as a violation of the Fourth Amendment, it should be analyzed as such, and not as a substantive due process claim" (quoting *Lauro v. Charles*, 219 F.3d 202, 208 (2d Cir. 2000))).

Here, the Fourth Amendment governs the substance of Plaintiff's § 1983 claims and an independent claim for substantive due process does not lie. Moreover, even to the extent that it did, Plaintiff has not alleged the existence of conduct so egregious or outrageous that it could be deemed to shock the conscience. *Oudekerk v. Lehoisky*, No. 1:24-CV-0311 (AMN/TWD), 2024 WL 1693850, at *6 n.8 (N.D.N.Y. Apr. 19, 2024) ("Even if the Court were to review Plaintiff's allegations within the framework of Fourteenth Amendment substantive due process, Plaintiff's allegations [that he was falsely arrested and maliciously prosecuted in retaliation for an earlier lawsuit] do not plausibly state Defendant's conduct 'shocks the conscience' so as to rise to the level of a violation of his substantive due process

rights."), *report and recommendation adopted*, 2024 WL 3385014 (N.D.N.Y. July 12, 2024).

For these reasons, Wayne County Defendants' motion to dismiss Plaintiff's substantive due process claim is granted.

## IV.   <u>Procedural Due Process</u>

In his claim for violation of his procedural due process rights, Plaintiff alleges without explanation that he was denied procedural rights and suffered harm.  (Dkt. 1 at ¶¶ 162-64).

The Fourteenth Amendment to the United States Constitution provides in part that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "To plead a violation of procedural due process . . . a plaintiff must first identify a property right, second show that the government has deprived him of *that* right, and third show that the deprivation was effected without due process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (internal quotation marks and citation omitted); *see also Chrebet v. County of Nassau*, 24 F. Supp. 3d 236, 244 (E.D.N.Y. 2014) (same).

Like Plaintiff's substantive due process claim, his procedural due process claim is encompassed by his Fourth Amendment claims.  *Oudekerk*, 2024 WL 1693850, at *6 ("Because Plaintiff's due process claims are merely duplicative of his other claims that are explicitly covered by the Fourth Amendment, he cannot bring an additional claim for violation of his right to substantive or procedural due process under the Fourteenth Amendment.").  Moreover, Plaintiff's complaint describes in detail the legal process to

- 20 -

which he was afforded.  Because he has not explained the nature of how his procedural due process rights were allegedly violated or how the process he received was otherwise inadequate, Defendant Wayne County's motion to dismiss this claim is granted.  *See Ovalle*, 2024 WL 3986720, at *4 ("As for procedural due process, New York provides ample appellate remedies (of which plaintiff availed himself), and plaintiff has not alleged that these remedies are constitutionally deficient.  Plaintiff is accordingly not entitled to relief under § 1983."); *Thomas v. Town of Lloyd*, No. 1:21-CV-1358, 2024 WL 118939, at *8 (N.D.N.Y. Jan. 11, 2024) ("Accordingly, to the extent that Thomas brings a procedural due process claim, that claim must be dismissed for failure to point to inadequate state process or post-deprivation remedy.").

## V.   Malicious Prosecution

Plaintiff asserts a § 1983 malicious prosecution claim against all Defendants.  To state a claim for malicious prosecution under § 1983, a plaintiff must allege that his Fourth Amendment rights were implicated by criminal proceedings initiated or continued against him, with malice and without probable cause, and that the proceedings were favorably terminated.  *Thompson v. Clark*, __ U.S. __, 142 S. Ct. 1332, 1336 (2022); *Harris v. Tioga Cnty.*, No. 23-503, 2024 WL 4179651, at *2 (2d Cir. Sept. 13, 2024) ("[M]alicious prosecution under federal and state law includes four elements: '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" (quoting *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003))).

A. **Prosecutorial Immunity for Claims Against DA Calarco, ADA Fox, ADA Callanan, and ADA Kadien**

Wayne County Defendants argue that principles of immunity preclude Plaintiff's claims for malicious prosecution against DA Calarco, ADA Fox, ADA Callanan, and ADA Kadien.[6]  Based on the current state of Plaintiff's allegations, the Court agrees.

Prosecutors performing traditional prosecutorial activities are given absolute immunity in § 1983 suits.  *See Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976).  "The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation. . . ."  *Barrett v. United States*, 798 F.2d 565, 571-72 (2d Cir. 1986); *see also Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) ("[A]bsolute immunity protects a prosecutor from [civil] § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate.").

---

[6]     Plaintiff does not address whether he is suing these defendants in their official or individual capacities, but principles of sovereign immunity would bar claims against them in their official capacities.  *Ali v. Shattuck*, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at *5 (N.D.N.Y. May 29, 2024) ("to the extent plaintiff may wish to sue the St. Lawrence County District attorney and ADA Carpenter in their official capacities, such claims would be barred by Eleventh Amendment immunity." (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993))), *report and recommendation adopted*, 2024 WL 3460745 (N.D.N.Y. July 18, 2024); *see also Meadows v. Buffalo Police Dep't*, No. 21-CV-449-LJV-HKS, 2024 WL 1142092, at *8 (W.D.N.Y. Mar. 14, 2024) ("As the Court explained, because New York State prosecutors act 'on behalf of the state . . . when prosecuting a criminal matter,' *Schnitter v. City of Rochester*, 556 F. App'x 5, 9 n.4 (2d Cir. 2014) (summary order) (citing *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988)), claims against 'a district attorney or an assistant district attorney' for prosecutorial acts are barred by sovereign immunity, *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (summary order).").

Despite the broad reach of absolute prosecutorial immunity, it does not extend to "those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." *Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995); *see also Warney v. Monroe Cty.*, 587 F.3d 113, 124 (2d Cir. 2009) ("[A] prosecutor enjoys absolute immunity even when doing an administrative act if the act is done in the performance of an advocacy function.").  Investigative acts are only covered by absolute prosecutorial immunity if they are "reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution, or to defend a conviction," but not if they are "undertaken in the phase of law enforcement that involves the gathering and piecing together of evidence for indications of criminal activities and determination of the perpetrators." *Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012).  "Thus, to establish immunity, the ultimate question is whether the prosecutors have carried their burden of establishing that they were functioning as advocates when they engaged in the challenged conduct." *Warney*, 587 F.3d at 121 (quotations omitted).

Allegations of improper motive and intentional wrongdoing do not control the inquiry into whether absolute prosecutorial immunity exists.  As the Second Circuit has explained:

> The relevant question . . . is whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor.  If the generic acts are within those functions, absolute immunity applies to protect the prosecutor even in the face of a complaint's allegations of malicious or corrupt intent behind the acts.  Otherwise, the absolute immunity would not be absolute.

*Giraldo*, 694 F.3d at 166.  In other words, if absolute immunity applies, it extends to even the presentation of false evidence in a criminal proceeding.  *Anilao v. Spota,* 27 F.4th 855, 864 (2d Cir. 2022) ("[A] prosecutor enjoys absolute immunity when determining which offenses to charge, initiating a prosecution, presenting a case to a grand jury, and preparing for trial. . . .  For that reason, we have held that absolute immunity extends even to a prosecutor who 'conspir[es] to present false evidence at a criminal trial.  The fact that such a conspiracy is certainly not something that is *properly* within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it.'" (quoting *Dory*, 25 F.3d at 83)), *cert. denied* 143 S. Ct. 1781 (2023); *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) ("[A]bsolute prosecutorial immunity extends even to conspiracies to present false evidence at trial . . . [or] in the grand jury setting.").

Here, all of Plaintiff's allegations supporting the claims against DA Calarco, ADA Fox, ADA Callanan, and ADA Kadien are related to their roles as advocates and their performance of the prosecutorial function and are accordingly barred.[7]  *See, e.g.*, *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (absolute prosecutorial immunity extends to

---

[7]     In paragraph 37 of the complaint, Plaintiff alleges that these Defendants "interviewed the witnesses, issued subpoenas, and filled out orders of protection on behalf of the witnesses who did not want them," before Plaintiff's arraignment.  (Dkt. 1 at ¶ 37). In a different context, perhaps these allegations could be construed as undertaken in the phase of law enforcement that involves gathering evidence and investigating criminal activity to fall outside the scope of absolute immunity.  But Plaintiff expressly alleges that these activities were undertaken as part of "the prosecution of the charges. . . ." (*Id.*).  *See Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (courts apply a "functional approach" to claims of absolute immunity focusing on "the nature of the function performed, not the identity of the actor who performed it").

"evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made"). Accordingly, Wayne County Defendants' motion to dismiss Plaintiff's claims for malicious prosecution against DA Calarco, ADA Fox, ADA Callanan, and ADA Kadien is granted.

### B. Malicious Prosecution Claims Against Deputy Dinardo and Deputy King

"In the context of malicious prosecution claims, the relevant probable cause determination is whether there was probable cause 'to believe [the arrestee] could be successfully prosecuted.'" *Sagy*, 2022 WL 6777602, at *5 (quoting *Posr v. Court Officer Shield*, No. 207, 180 F.3d 409, 417 (2d Cir. 1999)); *see also Delanuez v. City of Yonkers*, No. 20 CIV. 4476 (PED), 2022 WL 16540682, at *8 (S.D.N.Y. Oct. 28, 2022) ("The Second Circuit has also cautioned courts not to conflate probable cause to arrest with probable cause to believe that [a plaintiff] could be successfully prosecuted as in a malicious prosecution action, [o]nly the latter kind of probable cause is at issue[.]" (quotations and citations omitted)).

As explained by the court in *Sagy*:

"If probable cause existed at the time of arrest," then, "it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." *Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (internal quotation marks omitted). Thus, a "plaintiff must show that the defendants learned of some 'intervening facts' undermining probable cause 'between arrest and initiation of prosecution, [or the] claim[ ] of malicious prosecution cannot survive.'" *Soto v. City of New York*, 132 F. Supp. 3d 424, 452 (E.D.N.Y. 2015) (quoting *Thomas v. City of New York*, 562 F. App'x 58, 60 (2d Cir. 2014)) (alterations in original).

2022 WL 6777602, at *5.  "In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact."  *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).  In addition, "[w]here, as here, a grand jury indicted the plaintiff on the relevant criminal charge, New York law creates a presumption of probable cause that can only be overcome by evidence that the indictment 'was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith.'"  *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (quoting *Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000)).

Wayne County Defendants argue that the individual defendants are entitled to dismissal of Plaintiff's malicious prosecution claim because there existed probable cause to prosecute Plaintiff for the charges and in addition, Plaintiff has not adequately alleged personal involvement of each of the individual defendants.  Wayne County Defendants also argue that dismissal is warranted based on qualified immunity.  The Court agrees that the personal involvement of the two remaining individual defendants—Deputy Dinardo and Deputy King—has not been plausibly plead.  Accordingly, at this stage, the Court does not reach the alternative arguments in support of dismissal.

Plaintiff's use of impermissible "group pleading," without a proper identification of the personal involvement of each defendant, is not adequate.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Surgalign Spine Techs., Inc.*, No. 22-CV-09870 (JLR), 2024 WL 477031, at *4 (S.D.N.Y. Feb. 7, 2024) ("It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes." (quoting *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021)));

*Abadi v. NYU Langone Health Sys.,* No. 21CIV11073RAGWG, __ F. Supp. 3d __, 2024 WL 396422, at *2 (S.D.N.Y. Feb. 2, 2024) (noting that the use of "group pleading" is "routinely rejected by courts as insufficient to state a claim as to any particular defendant").

Plaintiff's complaint contains only scant reference to Deputy Dinardo and Deputy King. In one paragraph, Plaintiff contends that the charges against him were initiated and continued in an attempt to insulate Deputy Dinardo, Deputy King, and others from liability. (Dkt. 1 at ¶ 82). In another paragraph, Plaintiff alleges that "Defendant ADA Callanan withheld Brady material from Defendants Mr. Dinardo and Ms. King, which [if] presented, the Plaintiff's suppression hearing would have had a different outcome." (Dkt. 1 at ¶ 124). There are no other references in Plaintiff's complaint specific to Deputy Dinardo or Deputy King. These allegations do not allege wrongdoing by Deputy Dinardo or Deputy King that could sustain any cognizable claim against them for malicious prosecution. *Rich v. New York*, No. 21 CIV. 3835 (AT), 2022 WL 992885, at *12 (S.D.N.Y. Mar. 31, 2022) (dismissing malicious prosecution claim for lack of direct personal involvement by individual defendant when there were no allegations that the defendant was involved in falsifying or hiding evidence or was even aware of false statements in investigative reports).

Accordingly, Wayne County Defendants' motion to dismiss this claim against Deputy Dinardo and Deputy King is granted.

## C. Malicious Prosecution Claim Against Wayne County

To the extent Plaintiff attempts to sue Wayne County for a § 1983 malicious prosecution claim, such claim similarly fails. A plaintiff may plead an official policy or

custom by a municipality by alleging a pattern of similar police misconduct, consisting of multiple incidents over a continuous time period, that is "sufficiently persistent or widespread" that a supervising policymaker must have been aware.  *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007); *see also Bd. of Cnty. Commis. of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. . . .").

Like Plaintiff's claim against Wayne County for false arrest, Plaintiff's malicious prosecution also suffers from the same flaw: the allegations lack specificity and relate solely to Plaintiff rather than to any custom or policy of Wayne County.  On this basis, the claim fails.  *See Holley v. City of New York*, No. 23-CV-1838 (RA), 2024 WL 1116107, at *2 (S.D.N.Y. Mar. 14, 2024) (dismissing malicious prosecution claim against municipality where "allegation of a policy or custom of malicious prosecution, however, is conclusory" and examples provided "do not arise out of alleged malicious prosecution"); *Aurecchione v. Falco*, No. 7:22-CV-04538 (NSR), 2023 WL 6255529, at *6 (S.D.N.Y. Sept. 25, 2023) (dismissing malicious prosecution claim against municipality under *Monell* "because Plaintiff's allegations lack the specificity necessary for the Court to attribute the alleged constitutional violations to the County itself"); *Hutson v. New York City Police Dep't*, No. 15-CV-8797 (VEC), 2017 WL 727544, at *3 (S.D.N.Y. Feb. 23, 2017) ("Plaintiff has not alleged plausibly any grounds for the Court to infer that [any false arrest or malicious

prosecution] was the result of an unconstitutional policy, unofficial custom, or a failure to train . . . [therefore the p]laintiff's *Monell* claim against the City is dismissed").

Accordingly, Wayne County Defendants' motion to dismiss Plaintiff's malicious prosecution claim against Wayne County is granted.

## VI.   State Law Assault, Battery, and Negligence Claims against Wayne County

Finally, Wayne County argues that any state-law claims for assault, battery, and negligence are time-barred and/or fail to state a claim.

### A. Assault and Battery

It is undisputed that any claim Plaintiff may have for assault and battery against Wayne County arises from events in January 2021.  The statute of limitations for such claims is one year and 90 days.  *See Garrett v. City of Lackawanna*, No. 1:23-CV-00377 EAW, 2024 WL 3616518, at *6 (W.D.N.Y. July 31, 2024) (noting that "'controlling Second Circuit precedent'—namely, *Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016)— holds that intentional tort claims against a municipal employee are subject to the one-year-and-90-day statute of limitations in General Municipal Law § 50-i" (quoting *D'Angelo v. City of Lockport*, No. 19-CV-221-LJV-MJR, 2023 WL 6810274, at *6 (W.D.N.Y. Oct. 16, 2023))).  Because this action was filed on August 22, 2023, and the claims for assault and battery unquestionably accrued in January 2021, the assertion of such claims against Wayne County are time-barred.  Wayne County Defendants' motion to dismiss Plaintiff's state-law claim for assault and battery is therefore granted.

B. **Negligent Hiring, Supervision**

While a claim for negligence is also subject to the same statute of limitations, *see Elliott v. City of New York*, No. 23CIV352(AT)(VF), 2024 WL 1119275, at *4 (S.D.N.Y. Mar. 14, 2024) ("New York General Municipal Law § 50-i . . . provides that 'any action against a municipality for injury to person or property by reason of the negligence or wrongful act of any of its officers, agents or employees must be commenced within one year and ninety days of the event complained of.'" (quoting *Taylor v. Mayone*, 626 F.2d 247, 252 (2d Cir. 1980)), a claim for negligent hiring and supervision may be entitled to a "continuing violation" exception to the statute of limitations.  A "continuing violation" exception to a standard accrual date of a claim arises when "there is evidence of an ongoing . . . policy or practice." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996).  Courts have applied the continuing violation exception to claims for negligent hiring, training, and supervision. *Elliott v. City of New York*, No. 23CIV352(AT)(VF), __ F. Supp. 3d __, 2024 WL 1119275, at *6 (S.D.N.Y. Mar. 14, 2024) (declining to dismiss negligent hiring and supervision claim on statute of limitations grounds because "[r]ead in the light most favorable to Plaintiff, this claim is not tethered to [plaintiff's] mistreatment on April 7, but alleges continuing harm resulting from the City's negligent employment practices").  Accordingly, resolution of the timeliness issue on the instant Rule 12 motion is premature.

However, as to the merits of the claim, "[t]o establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting

therefrom.'" *Crout v. Haverfield Int'l, Inc.*, 269 F. Supp. 3d 90, 96 (W.D.N.Y. 2017)

(quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006)).  In addition, "to

state a claim for negligent supervision, hiring, training or retention of employees, a plaintiff

must allege, in addition to the usual elements of negligence, that the defendant employer

'knew of [an] employee's propensity to commit the alleged acts or that defendant should

have known of such propensity had it conducted an adequate hiring procedure.'" *AA by*

*BB v. Hammondsport Cent. Sch. Dist.*, 527 F. Supp. 3d 501, 508 (W.D.N.Y. 2021) (quoting

*N.U. v. E. Islip Union Free Sch. Dist.*, 2017 WL 10456860, at *16 (E.D.N.Y. 2017)).  Also,

the employee's actions must have been taken outside the scope of employment.  *Id.*

As summarized by the court in *Read v. Corning Inc.*, 371 F. Supp. 3d 87 (W.D.N.Y.

2019):

> [W]here a defendant's knowledge of some fact or circumstance is an element
> of a tort claim, a bare assertion that a defendant knew or should have known
> of that fact or circumstance is insufficient to state a claim.
> 
> . . .
> 
> Plaintiffs need not plead evidence, but that does not mean they can proceed
> on the basis of conjecture, based on a few scraps of information, or broad,
> conclusory allegations about what was generally known in the past.  They
> must allege facts which, if proven, would support a reasonable inference that
> defendants were culpably negligent.  In other words, as stated by the United
> States Supreme Court, plaintiffs must "nudge[ ] their claims across the line
> from conceivable to plausible. . . ." *Twombly*, 550 U.S. at 570, 127 S. Ct.
> 1955.  They have not done so, with respect to the negligence claim.

*Id.* at 92 (internal quotations and citations omitted).

Here, Plaintiff's complaint does not contain sufficient allegations that any of the

Wayne County Defendants had ever engaged in or been accused of constitutional violations

before their employment with Wayne County or provide any other basis for a conclusion

that Wayne County was or should have known about their propensity to do so before they were hired, which is fatal to Plaintiff's negligent hiring and supervision claim. *See Reinhardt v. City of Buffalo*, No. 1:21-CV-206, 2022 WL 2442300, at *14 (W.D.N.Y. July 5, 2022) (granting motion to dismiss negligent hiring claim where "there are no allegations that the Bail Shop Defendants knew that its employees had engaged in tortious conduct in the past or would do so in this case"); *Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) (negligent hiring claim failed due to lack of factual allegations regarding the existence of a prior act of misconduct and that employer should have known of any such act).

Nor did Plaintiff allege that the actions of Wayne County Defendants were taken outside the scope of their employment; in fact, he expressly alleged to the contrary that "[a]t all times mentioned, all officers and employees of Wayne were acting within the scope of their employment." (Dkt. 1 at ¶ 182); *Jeanty v. City of New York*, No. 21-CV-5344 (OEM) (JAM), 2024 WL 3849418, at *19 (E.D.N.Y. Aug. 16, 2024) ("[N]egligent training and supervision claims are precluded if the individual defendants acted within the scope of their employment." (quoting *Salamone v. United States*, 618 F. Supp. 3d 146, 153 (S.D.N.Y. 2022)). This too proves fatal to the claim.

Plaintiff having failed to plead the elements of this claim, Wayne County Defendants' motion to dismiss Plaintiff's claim for negligent hiring and supervision is granted.

## VII.   **Leave to Amend**

Generally, the Court will afford a *pro se* plaintiff an opportunity to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (internal quotation marks omitted).   However, leave to amend pleadings is properly denied where amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.").

Given Plaintiff's *pro se* status, the Court will grant Plaintiff leave to file an amended complaint, in which he may attempt to plead viable causes of action against Wayne County Defendants.   Plaintiff may file an amended complaint consistent with this Decision and Order within 30 days of entry of this Order.   Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [the original complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977).   Therefore, Plaintiff's amended complaint must include all necessary allegations so that it may stand alone as the sole complaint in the action.

## <u>CONCLUSION</u>

For the forgoing reasons, Wayne County Defendants' motion to dismiss (Dkt. 12) is granted.  Plaintiff is granted leave to amend consistent with this Decision and Order.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  September 23, 2024
        Rochester, New York